UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRENT DEWAYNE MULLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:22-cv-01867-TWP-MKK |
| ) | |
| MATTHEW MYERS, Sheriff, ) | |
| CHRIS LANE, Sheriff, in his official capacity, ) | |
| ) | |
| Defendants. ) | |

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Brent Dewayne Mullis ("Mr. Mullis") is incarcerated at the Bartholomew County Jail (the "Jail"). He has filed a *pro se* Motion For Immediate Federal Injunction, which the Court will treat as a motion for preliminary injunction, asking the Court to enter an injunction barring all religious events and speakers at the Jail until the Bartholomew County Sheriff provides a plan of action assuring that all religions are treated fairly and represented at the Jail. (Dkt. 8.) As explained in the Screening Order, (Dkt. 24), Defendant Chris Lane ("Sheriff Lane") is the current Sheriff of Bartholomew County, so any request for injunctive relief is necessarily directed to him and not the now-former Sheriff Matthew Myers ("former Sheriff Myers"), who is also a defendant in his individual capacity. For the reasons stated below, Mr. Mullis' motion is **denied**.

### I.  FACTUAL BACKGROUND

**A.  Facts Alleged in Amended Complaint and Motion for Preliminary Injunction**

Mr. Mullis bases his Amended Complaint, (Dkt. 23), on the following allegations:

Sheriff Matthew Myers allowed only one religion in the Jail—Christianity. Christian preachers repeatedly came to the cell blocks over the course of a four-month period, and Mr. Mullis was forced to listen to them because he was locked in his cell. In addition, Sheriff Myers promoted and attended a Christian rally at the

> Jail, offering pizzas, snacks, and sodas, among other things. These items were provided only to Christian inmates.

*See generally* Dkt. 24.

In his motion for preliminary injunction, Mr. Mullis attested to the following under penalty of perjury:

> Sheriff Myers continues to have 3-day Christian rallies at the Jail, where only Christians get to eat pizza, snacks, and soft drinks, only the Christian Lord's Prayer is prayed, only Christian songs are sung, and a Christian certificate is handed out. The only religious speakers, study groups, and rallies allowed in the Jail are Christian. Sheriff Myers personally attends the rallies and pays for pizza out of his own pocket. At a Christian rally held in late September and early October 2022, Sheriff Myers criticized non-Christian religions and inmates who have sued about religious issues at the Jail.

*See generally* Dkt. 8.

### B. Chief Deputy Sheriff Martoccia's Declaration

In his response to the motion for preliminary injunction, Sheriff Lane submitted a declaration from former Jail Commander now Chief Deputy Sheriff John Martoccia (Dkt. 41-1). Chief Deputy Sheriff Martoccia states the following under penalty of perjury:

> The Jail allows outside visitors to provide programming, including religious programming for inmates, provided they pass a background check and complete a Prison Rape Elimination Act ("PREA") class. The Jail does not solicit applicants from religious or other organizations; instead, applicants contact the Jail. During his time as Jail commander (September 2016 to October 2022), only representatives of Christian churches or organizations applied to visit and provide programming. If a non-Christian representative applied, the request would have been handled in the same manner as requests from Christian representatives. He spoke to Mr. Mullis in 2022 about Mr. Mullis' interest in having a Wiccan representative or "handler" provided programming. He told Mr. Mullis to have the handler contact the Jail for a visitor application. The handler never contacted him or requested an application. If the handler submits an application, it will be processed. If the handler passes the background check and takes the required PREA class, the handler will be allowed to provide Wiccan services or programming at the Jail. Finally, no application has or will be rejected based on the applicant's religion.

*See generally* Dkt. 41-1.

2

### C. Sergeant Courtney Fisher's Declaration

Sheriff Lane has also submitted a declaration from Sergeant Courtney Fisher (Dkt. 41-2). She stated the following under penalty of perjury:

> The Jail suspended all outside programming in 2020 because of the COVID-19 pandemic. In 2022, the Jail began to allow visitors again. Not all the providers that previously provided programming at the Jail contacted her to resume visits. One organization that resumed visits was New Day REC, which stands for "Residents Encounter Christ" ("REC"). Currently, REC provides men's and women's Bible studies once a week; in addition, another local church also provides a women's Bible study. Inmates can ask to attend a Bible study, but no inmate is required to attend.

*See generally* Dkt. 41-2.

When visits resumed in 2022, REC representatives would go into the cellblocks and speak and pray with inmates who wanted to do so. No inmate was required to speak with the REC representatives, but the Jail received grievances from inmates who said they did not want to hear religious messages or prayers and could not avoid hearing them. To remedy the issue, Jail administration decided that visitors could not pray or discuss religion in the cellblocks and that such discussions would have to take place outside the cellblocks. She sent an email to REC representatives directing them not to engage in prayer or speak about religion in the cellblocks. *Id.*

In addition to the weekly Bible studies/visits, REC holds three-day programs allowing inmates to hear talks, speak to representatives, and worship. The Jail does not ask REC to hold these events. Sign-up sheets are posted in cellblocks for inmates interested in attending. Inmates need not identify as Christian to attend, and no inmate is required to attend. *Id.*

### D. Former Sheriff Myers' Declaration

Finally, Sheriff Lane submitted a declaration from former Sheriff Myers (Dkt. 41-3). In his Declaration, former Sheriff Myers states under penalty of perjury:

> He used his own money to pay for pizzas at the fall 2022 REC event. REC provided the snacks and soft drinks, and no taxpayer dollars were spent on the event. No organization other than REC ever sought to hold an event similar to the fall 2022 three-day event, but, if it had, he would have supported the event regardless of the religious affiliation of the group sponsoring the event. Finally, on other occasions, he has personally paid for gifts for all the inmates, such as socks, which were given regardless of the inmates' religion.

*See generally* Dkt. 41-3.

## II.  PRELIMINARY INJUNCTION STANDARD

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). Determining whether a plaintiff "is entitled to a preliminary injunction involves a multi-step inquiry." *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437, 446 (7th Cir. 2022). "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Id.* "If these threshold factors are met, the court proceeds to a balancing phase, where it must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021). This "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). "In the final analysis, the district court equitably weighs these factors together, seeking at all times to minimize the costs of being mistaken." *Cassell*, 990 F.3d at 545.

### III.  DISCUSSION

At screening, Mr. Mullis was allowed to proceed with claims under the Free Exercise and Establishment Clauses of the First Amendment; the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a); and the Equal Protection Clause of the Fourteenth Amendment. (Dkt. 24.)  In his response to the motion for preliminary injunction, Sheriff Lane argues that Mr. Mullis is not likely to prevail on his claims because, among other reasons, he did not exhaust available administrative remedies before filing this suit and he has not presented any evidence that the Jail has actually excluded non-Christian religions. (Dkt. 42.)  He argues that Mr. Mullis cannot demonstrate irreparable harm and that his proposed injunction should not be entered because it would violate the constitutional rights of other inmates who would be prevented from exercising their religions and unnecessarily entangle the court in the day-to-day operations of the Jail.  *Id*.  Mr. Mullis did not file a reply.

The Court need not decide whether Mr. Mullis is likely to prevail on any of his claims because, even if he is, he has not established that he will suffer irreparable harm without an injunction.  Irreparable harm is "harm that 'cannot be repaired' and for which money compensation is inadequate." *Orr*, 953 F.3d at 502 (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)).  The plaintiff must show "that he will *likely* suffer irreparable harm absent obtaining preliminary injunctive relief." *Id.* (cleaned up).

Mr. Mullis' Amended Complaint and motion for preliminary injunction are largely devoted to allegations that implicate former Sheriff Myers personally.  But former Sheriff Myers is not the Sheriff of Bartholomew County anymore, Sheriff Lane is.  Without weighing in on whether any of former Sheriff Myers' alleged actions — such as buying pizza for the REC event, allowing Christian speakers into the cellblocks where other inmates could hear them, and making remarks

5

about non-Christian religions at the REC event — were unlawful, the Court observes that there is no evidence that Mr. Mullis is currently subjected to any such objectionable behavior or that there is any likelihood that he will be in the near future. Mr. Mullis has never claimed, let alone submitted any evidence showing, that he has personally been denied the right to practice his own religion. Similarly, the record is devoid of evidence suggesting that any non-Christian groups or individuals wishing to provide programming are currently being denied access to the Jail because they are not Christian. As to the complaint about having to hear Christian speakers in the cellblocks, Sheriff Lane has submitted undisputed evidence showing that the practice has ended, and there is no indication that he intends to reinstitute the practice. As for the three-day REC event, there is no indication that such event is currently scheduled or that, if it were scheduled, Sheriff Lane would participate in the event in the ways former Sheriff Myers was alleged to have done. And there is no evidence suggesting that Mr. Mullis would be required to attend the event, or would be prohibited from attending if he chose to do so. In short, Mr. Mullis simply has not shown that it is likely that he will suffer irreparable harm — or any harm at all — if an injunction is not granted.

## IV.  CONCLUSION

For the foregoing reasons, the motion for preliminary injunction, Dkt. [8], is **DENIED**. To the extent that Mr. Mullis contemplates filing another motion for preliminary injunction, any future request for preliminary injunctive relief must comply with the Prison Litigation Reform Act ("PLRA"). The PLRA provides: "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). "This section of the PLRA enforces a point repeatedly made by the United States Supreme Court in cases

challenging prison conditions: '[P]rison officials have broad administrative and discretionary authority over the institutions they manage.'" *Westerfer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 713 (7th Cir. Jan. 12, 2022) (reversing district court's order imposing permanent injunction because mandating that prisons hire a minimum number of mental health professionals "impermissibly strips [prison] officials of the flexibility necessary to adopt and implement policies that balance prison resources, safety concerns, and inmate health."). Accordingly, any future motion for preliminary injunction must be narrowly drawn to correct the harm alleged.

**SO ORDERED.**

Date: 8/16/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Brent Dewayne Mullis
BARTHOLOMEW COUNTY JAIL
543 2nd Street
Columbus, Indiana  47201

Pamela G. Schneeman
KNIGHT HOPPE KURNIK & KNIGHT, LTD.
pschneeman@khkklaw.com

Rosemary L. Borek
KNIGHT HOPPE KURNIK & KNIGHT, LTD
rborek@khkklaw.com